# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Peggy Snyder | ) |
|     Plaintiff, | ) |
| | ) C.A. No. |
| v. | ) |
| | ) |
| DowDupont, Inc., a Delaware Corporation | ) TRIAL BY JURY DEMANDED |
| and E.I. DuPont de Nemours, Inc., | ) |
| a Delaware Corporation | ) |
|     Defendants. | ) |

## COMPLAINT

1. Peggy Snyder is a resident of the United States, State of Delaware.

2. The defendant, E.I. DuPont de Nemours and Company is a corporation organized and existing under the laws of the State of Delaware, whose agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange St, Wilmington, DE 19801.

3. On September 1, 2017 a merge between E.I. DuPont de Nemours and Company and Dow Chemical became effective with the surviving company being DowDuPont, Inc., which assumed all the rights, duties, liabilities and debts of the defendant, E.I. DuPont de Nemours and Company.

4. The defendant, DowDuPont, Inc., is a corporation organized and existing under the laws of the State of Delaware whose agent for service of process is: The Corporation Trust Company, Corporation Trust Center, 1209 Orange St, Wilmington, DE 19801.

## JURISDICTION

5. This Court has jurisdiction based upon the existence of a question arising under the laws of the United States of America.

6. This Court has supplemented jurisdiction over Delaware State claims pursuant to 28 U.S.C. §1367.

7. This action arises under the Americans with Disabilities Act, as amended. The Family Medical Leave Act, 29 U.S.C. § 2617and  19 Del. C. § 720, et. seq.,

8. This Court has jurisdiction of the controversy based upon the provisions of 42 U.S.C. §§2000e-5(f)(3),12117 as well as 28 U.S.C. §1331 and 1334.

## VENUE

9. The unlawful employment practices alleged herein were committed within the State of Delaware.  Accordingly venue lies in this Court, under 42 U.S.C. §1339(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Prior to the filing of this action the Plaintiff timely filed a written Charge of Discrimination under the provisions of 19 Del. C. §720, et seq., which was a simultaneous filing under 42 U.S.C §2000e et seq., 42 U.S.C. §12101, et seq., with the Equal Employment Opportunity Commission, on November 1, 2016.

11. Thereafter, the Delaware Department of Labor issued the Plaintiff a "Right

to Sue Letter" on July 13, 2018 with regards to Charge Nos. SNY092116, and 17C-2017-00008.

12. This complaint is timely filed within ninety (90) days of the receipt of te above described "Right to Sue" letter.

## FACTS

13. Plaintiff began working for the defendant EI DuPont de Nemours and Company as a technician from September 1, 1997 until her discharge on September 14, 2016.

14. The plaintiff in the past has suffered from a serious health condition on an intermittent basis consisting of migraine headaches and sinus infections.

15. During the twelve months prior to her termination on September 14, 2016 the Plaintiff had worked for the defendant DuPont during that twelve month period.

16. Plaintiff worked for the defendant DuPont at least 1,250 hours within the year prior to her termination.

17. Defendant DuPont employed fifty or more persons at the plaintiff's work site, now known as the DuPont DOW Elastomers Kalrez® business unit at the Tralee Site, located in Newark, Delaware.

18. The plaintiff was employed as a Manufacturing Technician with eight hour work shifts.

19. In the year beginning in 2005, and specifically on April 19, 2005 while the plaintiff was taking intermittent family leave, DuPont Human Resources Representatives would on numerous occasions request that the plaintiff resign while handing her a letter detailing information about the FMLA time she had recently used.

20. On December 20, 2005 the same Human Resources Representatives (hereinafter referred to as "HR") wrote to plaintiff informing that she had exhausted any Short Term Disability Leave implying that she should then apply for "Total & Permanent Disability Leave."

21. On February 9, 2007 plaintiff again received a letter from the HR manager stating that she had an "…excessive use of disability leave reoccurring and other serious health problems."

22. On February 9, 2007 the HR manager had unilaterally, without the plaintiffs knowledge or request, initiated a "Total & Permanent Disability Retirement Pension" application on the plaintiffs behalf.

23. On October 30, 2007 plaintiff received another letter from the same HR manager.

24. On November 12, 2007 plaintiff's counsel wrote to DuPont's HR manager explaining DuPont's actions may have been in violation of the Americans with Disabilities Act and/or 42 U.S.C §2000e, describing male employees had missed

equal amounts of time and there had been no attempts to force them into retirement.

25. For the period of approximately four years thereafter beginning as of November 12, 2007 correspondence, described in ¶20, plaintiff suffered no further harassment or attempts to force her into retirement.

26. On July 28, 2011 DuPont insisted on a medical exam of the plaintiff because of her use of FMLA leave for her illnesses.

27. After the July 28, 2011 demand for a physical exam, her supervisor would ignore her request for vacation time.

28. On October 11, 2011 plaintiff was forcibly restrained in an office because she claimed she had a reaction to the use of certain chemicals at the job.

29. During the events described in ¶28, Plaintiff had to force her way out of the office.

30. Later in the same month of October, 2011 plaintiff received a letter, on October 25, 2011, from the HR manager insisting that she resign and apply for Total & Permanent Disability stating that there was no place for her to work at the site.

31. On November 3, 2011 plaintiff contacted Employee Assistance Program ("EAP") complaining of harassment and that she was overwhelmed with stress.

32. The EAP personnel requested that she immediately obtain guidance from a

psychologist for therapy.

33. DuPont EAP then removed her from work immediately.

34. In November of 2011 plaintiff filed a Charge of Discrimination for Retaliation and Disability with the EEOC, Charge No: 17C-2012-00055.

35. On February 2012 plaintiff received a letter putting her on "Permanent Work Release" instructing her that she should find another job that would fit her restrictions at another location with DuPont.

36. The February 8, 2012 letter also instructed the Plaintiff that she could apply for total and permanent disability.

37. On February 14, 2012 plaintiff wrote to Terry Williams, in Human Resources, describing and documenting the harassment and discrimination to which she was being subjected.

38. On April 16, 2014 plaintiff was called into a conference room and was accused in attempting to defraud her employer by false statements on her time card.

39. Plaintiff then explained that the times on her time card were entered by her supervisor, who had since retired and not by her.  Nevertheless plaintiff was told she was being investigated and was walked off the site and told to stay home.

40. Following investigation on an April 16, 2014 meeting it was demonstrated

that the supervisor had not entered her time that should have been and she was cleared to return to work.

41. Despite having been cleared about any wrongful conduct plaintiff was required to pay back the money because of her supervisors' actions.

42. On September of 2014 there were further communications to her about her ability to utilize FMLA leave.

43. On September 3, 2014 she was directed to report to DuPont medical.

44. On September 4, 2014 she was confronted by her supervisor and told to report to a mangers office.

45. When the plaintiff appeared in the manager's office the manager took away her badge and told her an investigation was being made of her and she was walked off the job for a second time, past her coworkers.

46. On September 10, 2014, after her consulting an attorney, and the attorney communicating with DuPont, she was cleared of wrongdoing and returned to work on February 23, 2015.

47. Beginning in May 2015, plaintiff's discomfort in her left ankle, increased for which she was initially prescribed a custom brace. However, her symptoms became worst.

48. On March 25, 2016 plaintiff was noted to still be "non-wt barring" on her left lower extremity.

49. During the period of time from March 2016 plaintiff continued on full FMLA leave.

50. On May 20, 2016 Dr. Kupcha provided and evaluation that the plaintiff was unable to work at that time but was to be reevaluated in four weeks.

51. On June 9, 2016 Dr. Kupcha released the plaintiff to sedentary work, 10 lbs. lifting, with occasional small object, but with requirement that she must use crutches, to keep her foot elevated with a modified work schedule of two hours per day.

52. On June 20, Dr. Kupcha issued an evaluation that she was to be weaned from her boot "as tolerated".

53. Also on June 20, 2016 he continued her two hours work per day, to use boots beginning as of June 27, 2016.

54. On July 1, 2016 again provided a Return to Work for the plaintiff, wearing a boot for two hours of work per day.

55. On July 12, 2016 plaintiff was released to light duty work four hours per work day until next office visit scheduled for July 31, 2016.

56. Also on July 12, 2016 plaintiff was instructed to use a cane as needed.

57. Also on July 29, 2016 plaintiff was continued on light duty four hours a day to use a cane as needed.

58. On or about July 29, 2016 DuPont medical disagreed with Dr. Kupcha and

directed Dr. Kupcha that that she return to work on a four to eight hour work day, without ever informing the plaintiff.

59. Plaintiff was scheduled for a predesignated vacation period from August 1 through August 5, 2016.

60. Plaintiff was not informed of the change in made by DuPont Medical, until August 5, 2016 after her new eight hour days were put into effect.

61. On August 15, 2016 plaintiffs back began to hurt and she was subsequently treated by a Dr. Patel for back pain.

62. On August 18, 2018 plaintiff received a call from Dr. Kupcha informing the plaintiff that her hours had been changed to revert back to four hours, as of August 19, 2016, for which a note was issued by Dr. Kupcha on August 22, 2016.

63. From August 29 through September 9 Plaintiff was again on prescheduled vacation.

64. On September 12, Dr. Kupcha provided a note allowing for eight hour work days, as of September 19, 2016, to tolerance with non-safety shoes and breaks as needed.

65. Also on September 12, 2016 DuPont medical requested Plaintiff to have Dr. Kupcha provide a doctor's note which was faxed to DuPont medical.

66. Plaintiffs follow up appointment with HR was changed from September 14 to Friday, September 16 at 11:00 a.m.

67. Upon information and belief during unknown periods of time in August of 2016, DuPont had plaintiff under surveillance, including taking photoaphs. .

68. Prior to her termination, including during August, 2016, plaintiffs physician had informed her she could perform and conduct her daily living activities as tolerated, to continue ice and elevate her foot as needed.

69. During the period of time when plaintiff was returned to work she requested an accommodation for her inability to walk, stand or sit for extended period of time without elevating her left foot.

70. When plaintiff initially returned to work DuPont could not or would not provide the means to elevate her foot and have it iced as required by her physician.

71. After approximately one week of return to work plaintiff was allowed to elevate her foot and ice it as needed.

72. At the time plaintiff was scheduled for surgery she informed defendants that she would need minimally three months to recuperate, possible more.

73. On September 12 plaintiff had an appointment with DuPont Medical, after she had faxed physician's note allowing her to return to work full time, but Medical cancelled the appointment, rescheduling it for September 14, but then cancelled the rescheduled appointment.

74. On September 14, the day of the rescheduled appointment with medical, regarding plaintiff's return to work on September 19, plaintiff's employment was terminated.

75. As a direct and proximate result of the actions of the defendant the plaintiff has suffered in the past, is suffering and will continue to suffer in the future mental pain and mental anguish.

76. As an additional and proximate result of the actions of the defendant, the plaintiff has incurred in the past, is presently incurring, will continue to incur in the future loss of income and benefits.

## COUNT I
## FMLA: Interference
## 29 U.S.C. §2615

77. The plaintiff incorporates herein and makes in pat hereof the allegations contained in ¶1-75.

78. The defendants termination of the plaintiff was made with the intent of depriving of her right to FMLA leave as required under 29 Del. C. §2601 et. seq., 2615(e)(1)&(2).

## COUNT II
## FMLA: Retaliation
## (29 U.S.C. §2615, 29 C.F.R. §825.220(c)

79. The plaintiff incorporates here and makes in part hereof the allegations contained in ¶1-77.

80. The defendants actions in terminating the plaintiffs employment were retaliation for seeking the benefits under the Family Medical Leave act. in violation of 29 U.S.C. §2615(2)

## COUNT III
## AMERICANS WITH DISABILITIES ACT: DISCRIMINATION
## (42 U.S.C. §12101 et. seq.)

81. The plaintiff incorporates herein and makes in part hereof the allegations contained in ¶1-79.

82. Despite the plaintiff's notice to the defendant and request to the defendant, and the defendants knowledge of plaintiffs disability of the inability to walk and stand without mechanical assistance, defendant failed to provide a reasonable accommodation to the plaintiff of a recommended certain period of extended leave, in violation of the Americans with Disabilities Act §12101 et. seq.

83. The defendant has by failing to make a reasonable accommodation to the plaintiff's disability discriminated against the plaintiff in violation of the Americans with Disabilities Act, 42 U.S.C. §12102(1)(A), et. seq.

84. The defendant, by terminating the employment of the plaintiff has discriminated against the plaintiff, because of the plaintiffs record of an impairment and/or disability in violation of 42 U.S.C. §12102(1)(B).

85. The defendant, by terminating the employment of the plaintiff has

discriminated against the plaintiff because the defendant regarded the plaintiff as having an impairment, as defined by 42 U.S.C. §12102(1)(C).

## COUNT IV
## AMERICANS WITH DISABILITIES ACT: RETALIATION
## (42 U.S.C. §12203)

86. The plaintiff incorporates here and makes in part hereof the allegations contained in ¶1-84.

87. The actions of the defendant in terminating the employment of the plaintiff were in retaliation of the plaintiff's requests of an accommodation and/or exercise and accommodation of extended medical leave because of her disability is in violation of 42 U.S.C. §12203.

## COUNT V
## Delaware Handicap Person's
## Employment Protections Act: Discrimination
## 19 Del.C. §720, et. seq.

88. Plaintiffs incorporate herein and make a part hereof the allegations in ¶1 87.

89. The defendant has by failing to make a reasonable accommodation for the Plaintiff 's disability, and by terminating the plaintiff was in violation of the Delaware Handicap Persons Employment Protections Act, 19 Del. C. §§ 722(4)a. & 724

90. The defendant, by terminating the employment of the plaintiff has

discriminated against the plaintiff because of the plaintiff's record of impairment and/or disability in violation of Delaware Handicap Persons Employment Protections Act, 19 Del. C. §§ 722(4)b. 724.

91. The defendant, by terminating the employment of the plaintiff has discriminated against the plaintiff because the defendant regarded the plaintiff as having an impairment as defined by 19 Del. C. §§ 722(4)c. & 724.

### COUNT VI
### Delaware Handicap Person's
### Employment Protections Act: Retaliation
### 19 Del.C. §726,

92. Plaintiff incorporates herein and makes in part hereof the allegations contained in ¶1-91.

93. The actions of the defendant in terminating the employment of the plaintiff were in retaliation for the plaintiff's request of an accommodation and/or extended medical leave because of her disability in violation of 19 Del.C. § 726.

WHEREFORE, the plaintiffs request the Court to enter judgement in her favor against the defendants as follows:

    a.    Declare the conduct by the defendant be in violation of plaintiff's statutory rights.

    b.    Issue injunctive relief directing that the plaintiff be awarded a Supervisor's Position with all of her right and compensation provided by such

her former position, and/or any position she would have been eligible to fill but for her alleged employment termination.

 c. Award the plaintiff back pay, future pay and compensatory damages for her losses from the date of her wrongful termination until the date of any judgement, and front pay for future losses.

 d. Award the plaintiff sufficient funds to compensate her for her pain and mental anguish, which cannot otherwise be compensated by any equitable relief.

 e. Award the plaintiff compensatory and punitive damages not otherwise specified herein.

 f. Award the plaintiff any and all liquidated damages, which would make the plaintiff "whole" and to which she is entitled.

 g. Award the plaintiff attorney fees, and the cost of this action, pre-judgement and post-judgement interest; and,

 h. Award the plaintiff such other and further relief and this Court deems just and proper.

          */s/ Gary W. Aber*
          GARY W. ABER (DSB#754)
          704 N. King Street, Suite 200
          P.O. Box 1675
          Wilmington, DE  19899
          (302) 472-4900
August 17, 2018    Attorney for Plaintiff