# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PEGGY SNYDER, | ) |
| | ) |
| Plaintiff, | ) |
| | )   C.A. No. 18-01266 CFC-SRF |
| v. | ) |
| | ) |
| E.I. DUPONT de NEMOURS, INC., a | ) |
| Delaware corporation, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGEMENT

John M. Nolan, Esq., *admitted Pro Hac Vice*
J. Michael Nolan, Esq., *admitted Pro Hac Vice*
JACKSON LEWIS PC
1601 Cherry Street, Suite 1350
Philadelphia, PA  19102
Phone:  267-319-7840; 267-319-7802
Email:  NolanJ@jacksonlewis.com;
J.Michael.Nolan@jacksonlewis.com

Margaret M. DiBianca, Esq. (No. 4539)
CLARK HILL PLC
824 N. Market Street, Ste. 710
Wilmington, DE 19899
Telephone: (302) 250-4748
Email: mdibianca@clarkhill.com

Dated: April 20, 2020

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ..................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ........................................... 1

SUMMARY OF THE ARGUMENT ........................................................ 2

   I.  INTRODUCTION ........................................................................ 2

STATEMENT OF FACTS ....................................................................... 4

STANDARD OF REVIEW ..................................................................... 13

ARGUMENT ........................................................................................ 14

   I.  Plaintiff Cannot Establish a *Prima Facie* Claim of Retaliation under the ADA, DPDEPA, or the FMLA ................................................ 15

      A.  Plaintiff Cannot Establish a *Prima Facie* Claim for Retaliation under the ADA or DPDEPA. ................................................ 15

   II. Even if Plaintiff Establishes a *Prima Facie* Case of Retaliation, DuPont Had Legitimate, Non-retaliatory Reasons for Terminating Plaintiff's Employment ........................................................................ 24

      A.  Plaintiff Cannot Establish that DuPont's Legitimate Reasons for Terminating Her Employment Were Instead a Pretext for Retaliation. Plaintiff's Claims Must Therefore Be Dismissed ........ 26

CONCLUSION ...................................................................................... 32

i

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................13

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................13

*Doe v. Luzerne Cty.*,
   660 F.3d 169 (3d Cir. 2011) ............................................................13

*Escanio v. UPS*,
   538 F. App'x 195 (3d Cir. 2013) .....................................................21

*Farrell v. Planters Lifesavers Co.*,
   206 F.3d 271 (3d Cir. 2000) ..................................................... 16, 21

*Fed. Rule Civ. P. 56* ............................................................... 14, 31

*Feliciano v. Coca-Cola Refreshments USA, Inc.*,
   281 F. Supp. 3d 585 (E.D. Pa. 2017) ..............................................20

*Fuentes v. Perskie*,
   32 F.3d 759 (3d Cir. 1994) ..............................................................24

*Harter v. GAF Corp.*,
   967 F.2d 846 (3d Cir. 1992) ............................................................14

*Jones v. Sch. Dist.*,
   198 F.3d 403 (3d Cir. 1999) ..................................................... 26, 27

*Keller v. Orix Credit Alliance, Inc.*,
   130 F.3d 1101 (3d Cir. 1997) ..................................... 4, 26, 27, 31

*Krouse v. Am. Sterilizer Co.*,
   126 F.3d 494 (3d Cir. 1997) ..................................................... 16, 21

*Lauren W. ex rel. Jean W. v. DeFlaminis*,
   480 F.3d 259 (3d Cir. 2007) ............................................................16

*LeBoon v. Lancaster Jewish Cmo. Or. Ass'n*,
   503 F.3d 217 (3d Cir. 2007) ..................................................... 21, 22

*Martin v. Brevard County Sch.*,
   543 F.3d 1261 (11th Cir. 2008).............................................................20

*Mascioli v. Arby's Rest. Grp., Inc.*,
   610 F. Supp. 2d 419 (W.D. Pa. 2009) .............................................. 20, 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................ 13, 14

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) ................................................................... 14, 20, 24

*McNelis v. Pa. Power & Light, Susquehanna, LLC*,
   2016 U.S. Dist. LEXIS 38767 (M.D. Pa. Mar. 23, 2016)....................17

*Paradoa v. Phila. Hous. Auth.*,
   2014 U.S. Dist. LEXIS 75199 (E.D. Pa. June 2, 2014) ......................26

*Raytheon Co. v. Hernandez*,
   540 U.S. 44 (2003) .................................................................................26

*Roberson v. City of Wilmington*,
   2018 U.S. Dist. LEXIS 163519 (D. Del. Sep. 24, 2018) ....................22

*Sampson v. Methacton Sch. Dist.*,
   88 F. Supp. 3d 422.................................................................................14

*Shaner v. Synthes (USA)*,
   204 F.3d 494 (3d Cir. 2000) ..................................................................26

*Smith v. City of Allentown*,
   589 F.3d 684 (3d Cir. 2009) ..................................................................24

*Tex. Dep't of Comm. Affairs v. Burdine*,
   450 U.S. 248 (1981) ...............................................................................24

*Thomas v. Town of Hammonton*,
   351 F.3d 108 (3d Cir. 2003) ............................................................ 18, 22

*Tolliver v. Delmarva Found. for Med. Care*,
   2019 U.S. Dist. LEXIS 149115 (D. Del. Sep. 3, 2019) ......................15

*Wilgus v. Bayhealth Med. Ctr., Inc.*,
    2018 Del. Super. LEXIS 1768, (Del. Super. Ct. 2018)........................................15

*Williams v. Phila. Hous. Auth. Police Dep't*,
    380 F.3d 751 (3d Cir. 2004) ........................................................ passim

*Wilson v. Iron Tiger Logistics, Inc.*,
    62 F. Supp. 3d 412 (E.D. Pa. 2014)......................................................15

**STATUTES**

The Americans with Disabilities Act ...................................................*passim*

Delaware's Person's with Disabilities Employment Protections Act ............*passim*

The Family and Medical Leave Act..................................................*passim*

**Rules**

*Fed. R. Civ. P. 56* ....................................................................6, 13

## NATURE AND STAGE OF PROCEEDINGS

This matter involves an employment dispute.  Plaintiff initiated suit on August 20, 2018, alleging violations of the Family and Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), and Delaware's Person's with Disabilities Employment Protections Act (DPDEPA).[1] (D.I. 1). DuPont subsequently answered Plaintiff's Complaint on October 3, 2018. (D.I. 9). The Court then entered a scheduling order on January 10, 2019, which set a discovery deadline of July 10, 2019, and a summary judgment deadline of September 15, 2109. (D.I. 20). The parties thereafter stipulated to the extension of the discovery deadline several times, most recently because of issues related to the coronavirus pandemic. (D.I. 6, 101, 110, 118).

On February 27, 2020, the parties agreed to the stipulated dismissal of Counts I, III, and V of Plaintiff's Complaint, leaving only Counts II, IV, and VI – Plaintiff's FMLA, ADA, and DPDEPA retaliation claims. (D.I. 107). The Court's final Order to extend the discovery deadline was provided on April 21, 2020, and provided that the deadlines for discovery and dispositive motions would be May 8, 2020 and May 29, 2020, respectively. (D.I. 118).

---

[1]     Plaintiff's Complaint incorrectly refers to Delaware's Person's with Disabilities Employment Protections Act as the Delaware Handicap Person's Employment Protections Act.

This is Defendant's Opening Brief in Support of its Motion for Summary Judgment, respectfully requesting the dismissal of Plaintiff's remaining claims – Counts II, IV, and VI.

## SUMMARY OF THE ARGUMENT

This Court should grant DuPont's motion for summary judgment because Plaintiff cannot establish a *prima facie* case of retaliation under the ADA, FMLA, or DPDEPA – which requires proof of a causal link between her engagement in protected activity and the termination of her employment. Even assuming *arguendo* that Plaintiff is able to establish her *prima facie* case, the Third Circuit then requires her to prove by a preponderance of the evidence that the legitimate, non-retaliatory reason offered by DuPont for terminating her employment – her dishonest exploitation of DuPont's short-term disability policy – was false and instead a pretext for retaliation against Plaintiff for engaging in activity protected by the ADA, FMLA, or DPDEPA. In other words, Plaintiff must prove that but for her engagement in such protected activity, she would not have been terminated. For the reasons discussed in more depth below, Plaintiff is wholly unable to satisfy this burden.

## I.    INTRODUCTION

Defendant E. I. du Pont de Nemours and Company ("DuPont"), by and through its undersigned counsel, respectfully submits this Opening Brief in support

2

of its motion for an Order granting summary judgment pursuant to *Fed. R. Civ. P. 56*, dismissing the Amended Complaint filed by Plaintiff, Peggy Snyder, with prejudice.

For over nineteen years, DuPont employed Plaintiff as a Technician at its Tralee Park site. Through the entirety of Plaintiff's nearly two decade-long tenure, Plaintiff concedes she (1) was never denied a request for FMLA leave or short-term disability, (2) was always placed back in the same or a similar position after returning from FMLA or short-term disability leave, and (3) always received the same salary and benefits upon her return from FMLA or short-disability leave.

The reason Plaintiff's employment was terminated is simple. For nearly six months following her foot surgery – while availing herself of DuPont's short-term disability policy and representing that she suffered pain symptoms such that she could not fulfill the duties of her sedentary, sitting position – Plaintiff was repeatedly observed violating her treating physician's restrictions and engaging in behavior that contradicted the severe symptoms she had been continuously reporting to her treating physician and DuPont Medical. Plaintiff's flagrantly deceptive efforts to extend her receipt of disability payments is a terminable offense under DuPont's Code of Conduct, which informs every employee that where misconduct is identified, the responsible individuals will be held accountable and disciplined up to and including employment termination.

To proceed beyond the summary judgment stage, Plaintiff must prove to this Court by a preponderance of the evidence that the above-mentioned reason for terminating her employment "was not merely wrong, but that it was so plainly wrong that it cannot have been [DuPont's] real reason." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (*en banc*)). As discussed in more detail below, this is an impossible hurdle for Plaintiff to overcome as the evidentiary record is brimming with numerous examples of the deceitful behavior Plaintiff engaged in to fraudulently obtain short-term disability payments.

When considering the incontrovertible evidence of Plaintiff's dishonesty, Plaintiff cannot prove, and no reasonable jury would find, that Plaintiff's employment was terminated in retaliation for her engagement in the same protected activities she had engaged in without issue for nineteen years – and not, instead, terminated as a consequence of her manipulation of DuPont's disability policy. DuPont is therefore entitled to summary judgment and respectfully requests that this Court dismiss Plaintiff's Complaint in its entirety.

## STATEMENT OF FACTS

The facts on which this motion is based are fully set forth in the accompanying Concise Statement of Facts in Support of Defendant's Motion for Summary Judgment ("Concise Statement of Facts" or "CSF"). These facts will not

4

be repeated in full here, but are summarized below and referred to herein with citations to the Concise Statement of Facts.

Plaintiff worked for DuPont for over nineteen years and has admitted under oath that throughout her almost two decades of employment, she had never been denied a request for FMLA leave or short-term disability, she had always been placed in the same or a similar position upon return from FMLA or short-term disability leave, and she had always received the same salary and benefits upon her return from FMLA or short-term disability leave. (CSF ¶¶121-123). The termination of Plaintiff's employment in this instance was not the result of retaliatory animus, but was instead a consequence of (1) her flagrant exploitation of DuPont's short-term disability policy, (2) her disregard for her treating physician's prescribed restrictions, and (3) her repeated instances of dishonesty with respect to the severity of her foot injury – all in violation of DuPont's Code of Conduct. (CSF ¶¶70-115, 124-25).

As Plaintiff explained in her testimony, her job as a Technician was a sedentary one that required her to sit. (CSF ¶108). On March 16, 2016, Plaintiff underwent posterior tibial tendon reconstruction surgery on her left foot and her treating physician, Dr. Paul Kupcha, explained to her that she was to remain "strict non-weight bearing" for ten to twelve weeks. (CSF ¶¶47, 49-50). Plaintiff testified that remaining non-weight bearing was "absolutely" important to her recovery.

(CSF ¶51). On March 25, 2016, Plaintiff had a follow-up appointment with Dr. Kupcha in which he noted that Plaintiff must remain non-weight bearing and explained that "[s]trict compliance to [the] plan is imperative." (CSF ¶58). Plaintiff testified that after this meeting she understood that her strict compliance to the plan was important. (CSF ¶59). While Plaintiff was out of work on short-term disability leave, Tralee Park[2] employee Paul Klimek told Area Manager Stephen Coughlan that Plaintiff was at a pool party. (CSF ¶62). Further, Klimek had heard from "[c]ountless people" that Plaintiff was seen outside of the workplace acting in a manner inconsistent with her alleged need for disability leave. (CSF ¶62).

As a result, Tralee Park Plant Manager Joe Guerrieri, the Plaintiff's supervisor Randy King, and Coughlan made the decision to have Plaintiff's activities surveilled by a third-party investigative agency. (CSF ¶63). The video that was captured over the following several months includes repeated examples of Plaintiff disobeying Dr. Kupcha's directives and acting in direct contradiction to the severe symptoms she was reporting as part of her deceptive effort to extend the short-term disability payments she was receiving from DuPont. (CSF ¶¶65-115).

On May 17, 2016, Dr. Kupcha filled out an Attending Physician Statement for Plaintiff which included the directive "no driving," and explained that Plaintiff was still "non weightbearing." (CSF ¶70). Two days later, on May 19, 2016,

---

[2]     Plaintiff worked as a Technician at DuPont's Tralee Park site. (CSF ¶ 2).

6

Plaintiff emailed Dr. Kupcha's employee Nancy Rossetti explaining that she needed to re-schedule her appointment for May 26, 2016 because she did not have someone to drive her to that appointment. (CSF ¶72). On May 27, 2016 – one day after the doctor's appointment Plaintiff cancelled because she could not find someone to drive her – Plaintiff violated Dr. Kupcha's "no driving" directive and was video recorded driving her Hummer SUV to her nephew's house. (CSF ¶73). While at her nephew's house on May 27, 2016, Plaintiff was also recorded violating Dr. Kupcha's "non weightbearing" directive by picking up a five-year-old child with one arm. (CSF ¶73). Further, Plaintiff was video recorded walking around the backyard of her nephew's house with two children. (CSF ¶74).

Three days later, on May 30, 2016, Plaintiff was again video recorded disobeying Dr. Kupcha's "no driving" and "non weightbearing" instructions as she drove to her nephew's house, walked down the front stairs without a boot when leaving, and was recorded getting into the driver's seat of her Hummer by stepping up into the elevated vehicle with her injured left foot before driving away. (CSF ¶75). Further, while Plaintiff was still out on full disability and representing to her supervisor that "all she does is lay around . . . in pain, [and] she can't come into work and sit down," Tralee Park Plant Manager Joe Guerrieri personally witnessed Plaintiff stand at a Texas Roadhouse restaurant until she was seated, and then "s[it] down on a hard wooden bench for, roughly, an hour." (CSF ¶82). As Guerrieri

testified: "[S]he was sitting on a hard wooden bench, but she could not, according to her, sit in a comfortable office chair." (CSF ¶82).

On June 2, 2016, Dr. Kupcha filled out an Attending Physician Statement and again reiterated that Plaintiff was still "non weight bearing." (CSF ¶76). That same Attending Physician Statement asked, on question #15: "Has patient been given any driving restrictions for this disability period?" Dr. Kupcha again ordered "no driving." (CSF ¶77). When Plaintiff was asked at her deposition what she understood the term "disability period" to mean regarding the "no driving" directive, she testified that it refers to the time period of March 16, 2016 through "at least" June 2, 2016 (CSF ¶78), thereby conceding that she repeatedly violated Dr. Kupcha's explicit orders not to drive each time she was recorded driving her Hummer SUV prior to June 2, 2016.[3] Plaintiff further testified that as of June 2, 2016 she was still required to remain non-weightbearing by Dr. Kupcha., thereby admitting that she was violating his non-weightbearing directives each time she was video recorded walking or placing weight on her injured left foot prior to that date. (CSF ¶79).

Plaintiff received a call on June 9, 2016 from DuPont Medical nurse Kenneth McLaughlin, which reminded her that she had an appointment scheduled

---

[3]      Worthy of note, Plaintiff was video recorded driving in defiance of Dr. Kupcha's directive on six separate occasions during the March 16, 2016 through June 2, 2016 disability period.  (CSF ¶¶65-68, 73, 75).

for June 10th. Plaintiff replied that she "cannot drive[] [and] is non-weight

bearing." (CSF ¶83). That same day, Plaintiff emailed Dr. Kupcha's employee

Nancy Rossetti, stating: "Even though there is a driving restriction on the form you

sent to them[,] I'm being made to drive to an assessment appointment with DuPont

medical," further acknowledging her driving restrictions. (CSF ¶84). Upon arrival

at her appointment on June 10, 2016, Plaintiff informed Nurse McLaughlin that Dr.

Kupcha allowed her to drive, but "only to appointments." (CSF ¶85). Plaintiff

provides no evidence of such permission from Dr. Kupcha, but even if true,

Plaintiff violated this directive each time she was observed driving to various

locations during her disability period of March 16, 2016 through June 2, 2016.

(CSF ¶¶65-68, 73, 75).

Eventually, Plaintiff returned to work on a two-hour light duty schedule on

June 27, 2016 – as prescribed by Dr. Kupcha. (CSF ¶88). Upon returning to work,

Plaintiff continued to receive full short-term disability payments for the hours she

was not working each day. (CSF ¶116). On August 1, 2016, DuPont Medical nurse

Timothy McLaughlin spoke with Dr. Kupcha, who "agree[d] to release [Plaintiff]

to eight hours of work." (CSF ¶92).

On August 5, 2016, Plaintiff visited Dr. Kupcha, who noted that Plaintiff

explained to him that she felt a "sharp, stabbing, aching, dull, throbbing pain that

occur[red] constantly," along with "swelling, bruising, tingling, weakness, . . .

9

stiffness and numbness." (CSF ¶93). Plaintiff testified that after Dr. Kupcha asked

her questions about her foot "[she] would answer his questions[] and he would

make his decisions from there." (CSF ¶94). Importantly, Plaintiff testified that she

knew DuPont's medical staff would rely on the notes Dr. Kupcha provided to them

on her behalf. (CSF ¶94). Plaintiff further explained to Dr. Kupcha that her

symptoms were aggravated by "standing, squatting, exercise, lying in bed, stairs,

sitting, and walking." (CSF ¶93). As a result of the severity of Plaintiff's reported

symptoms, Dr. Kupcha required Plaintiff to "[c]ontinue with light duty" at DuPont.

(CSF ¶95).

Despite the entirely sedentary nature of Plaintiff's position at Dupont,

Plaintiff complained to Dupont Medical about pain and swelling in her left foot for

three consecutive days – August 17th to August 19th – and provided a doctor's note

requiring that she be placed back on four-hour shifts. (CSF ¶98-103). After being

placed on four-hour light duty, Plaintiff was video recorded using her newly free

afternoons to receive a manicure and pedicure and mow her lawn.  (CSF ¶104-

107).

On August 17, 2016, Plaintiff explained to Nurse McLaughlin: "[T]he eight

hours is killing me" – referring to her eight-hour shift. (CSF ¶98). Later that same

day, Plaintiff reported to DuPont Medical that her "back and left foot bec[a]me

very pain[ful] at about 1 pm." (CSF ¶98). On August 18, 2016, Plaintiff "stated

10

that [her] left foot [was] swollen and very painful." (CSF ¶99). On August 19, 2016, Plaintiff called Nurse McLaughlin to "report[] some swelling on [her] left foot" and inform him that Dr. Kupcha's physician assistant "put[] her on 4 hours per work day." (CSF ¶100). That day, Nurse McLaughlin left a message with Dr. Kupcha and his physician assistant, asking them to send confirmation of Plaintiff's reduced work hours in a note. (CSF ¶100). On August 19, 20, 22, and 23, DuPont received surveillance reports observing that Plaintiff was walking, pivoting, and stepping up into her Hummer SUV "without any apparent issue." (CSF ¶¶100-02). On August 23, 2016, apparently in response to Plaintiff's aforementioned complaints regarding her left foot, McLaughlin received and reviewed a note from Dr. Kupcha, prescribing: "Light duty only until next visit of 9/12/16 . . . 4 hours per day." (CSF ¶102, 103).

Two days later, on August 25, 2016, after leaving her four-hour light duty shift, Plaintiff was video recorded walking through a Wal-Mart parking lot without crutches, a boot, a cane, and without a limp after receiving a manicure and pedicure at the store. (CSF ¶104-105). Indeed, Plaintiff testified that (1) she received a manicure and pedicure at Wal-Mart, (2) she was on four-hour light duty at DuPont, and (3) she was receiving disability payments at the time. (CSF ¶¶104-106). After receiving her manicure and pedicure, Plaintiff went home and was

video recorded mowing her lawn in a riding lawn mower for approximately ninety minutes. (CSF ¶¶107).

On September 12, 2016, at a follow-up appointment with Dr. Kupcha, Plaintiff again provided on the Self-Assessment Form that her symptoms were made worse by lying in bed, sitting, lifting, and walking. (CSF ¶110). On September 14, 2016, Plaintiff was terminated for misrepresenting her injury for the purpose of extending her receipt of payments under DuPont's short-term disability plan, which violated DuPont's express prohibition against the "[i]mproper use of company funds" and the "[c]oncealment of non-compliance with a [DuPont] . . . policy." (CSF ¶¶113, 124-25). Specifically, Plaintiff was terminated for "(1) misrepresent[ing] . . . facts to [Supervisor] Randy [King] and DuPont [Medical] and (2) [for] us[ing] DuPont disability leave for purposes that [were] inconsistent with her recovery and counter to her doctor's orders." (CSF ¶114).

Plaintiff testified that HR Manager Cheryl Drew informed Plaintiff of her termination and explained to Plaintiff that she had been seen mowing her lawn and getting a manicure and pedicure while availing herself of DuPont's disability policy. (CSF ¶115). Plaintiff's grievous abuse of DuPont's short-term disability policy was a terminable offense under DuPont's Code of Conduct, which informs every employee that "[w]here misconduct is identified, responsible individuals will

be held accountable and disciplined, . . . up to and including employment termination." (CSF ¶124).

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(a). All inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Asserted disputes of fact are "material" if their resolution could affect the outcome of the case under the applicable substantive law and are "genuine" if the evidence bearing on the disputed facts is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"The nonmoving party cannot establish a genuine dispute as to a material fact by pointing to unsupported allegations in the pleadings." *Doe v. Luzerne Cty.*, 660 F.3d 169, 175 (3d Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Indeed, "[t]o defeat a motion for summary judgment, the nonmoving party must raise more than some metaphysical doubt as to the material facts, . . . and the court must determine that a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* (internal citations and quotations omitted) (second alteration in original).

Once the moving party has demonstrated the absence of genuine issues of material fact, the burden shifts to the non-moving party to "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992). Stated differently, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 599 (emphasis in original) (quoting *Fed. Rule Civ. P.* 56(e)). In this case, "the record taken as a whole c[an] not lead a rational trier of fact to find for [Plaintiff], [and] there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

## ARGUMENT

"FMLA retaliation claims[] [and] ADA retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework." *Sampson v. Methacton Sch. Dist.*, 88 F. Supp. 3d 422, 444 (E.D. Pa. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-803 (1973)). Under this framework: "(1) plaintiff bears the burden of establishing a prima facie case of [retaliation]; (2) the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action;" and "(3) if defendant meets its burden of production, plaintiff must prove by a preponderance of the evidence that

14

defendant's proffered reason was a pretext for [retaliation.]" *Wilson v. Iron Tiger Logistics, Inc.*, 62 F. Supp. 3d 412, 414 (E.D. Pa. 2014).

For the reasons discussed below, Plaintiff is unable to establish a *prima facie* case of retaliation under the ADA, DPDEPA, or FMLA, and, even assuming *arguendo* that she is able to satisfy that threshold requirement, she is unable to provide evidence sufficient for a reasonable factfinder to conclude that DuPont's legitimate, nonretaliatory reason for terminating her employment was a pretext for retaliation.

## I.    Plaintiff Cannot Establish a *Prima Facie* Claim of Retaliation under the ADA, DPDEPA, or the FMLA.

### A.    Plaintiff Cannot Establish a *Prima Facie* Claim for Retaliation under the ADA or DPDEPA.

"Delaware's employment discrimination laws are substantially the same as its federal counterparts, and it is appropriate to apply federal case law to [retaliation] claims raised under the . . . DPDEPA."[4] *Tolliver v. Delmarva Found. for Med. Care*, 2019 U.S. Dist. LEXIS 149115, at *4-5 (D. Del. Sep. 3, 2019). *See also Wilgus v. Bayhealth Med. Ctr., Inc.*, 2018 Del. Super. LEXIS 1768, *2 (Del. Super. Ct. 2018) (recognizing that the "[DP]DEPA parallels the ADA").

---

[4]    Plaintiff's Complaint incorrectly refers to Delaware's Person's with Disabilities Employment Protections Act (DPDEPA) as the Delaware Handicap Person's Employment Protections Act.

"To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).

"To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) an intervening pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)).

With respect to Plaintiff's ADA retaliation claim, she alleges that the protected activity she engaged in was the "request[ing] of an accommodation" and exercising "extended medical leave because of her disability." (Complaint, ¶¶87-88). For purposes of this motion only, DuPont agrees that Plaintiff engaged in protected activity by requesting accommodations to work in an area that did not require steel toe shoes and that was near a bathroom, as well as an accommodation to adjust her work schedule to light duty, instead of the typical eight-hour work

day. (CSF ¶¶89-90). It is undisputed that DuPont provided these accommodations to Plaintiff to assist her in performing her entirely sedentary job duties. (CSF ¶¶89-90, 108).

Importantly, over two months passed between Plaintiff's receipt of her requested accommodations on June 27, 2016 – when she returned to work – and her termination on September 14, 2016. (CSF ¶¶88-90, 113). The Third Circuit has declared that a two-month gap between an employee's protected activity and their termination is insufficient to prove the unusually suggestive temporal proximity necessary to establish a causal connection between the two actions. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760-61 (3d Cir. 2004), *superseded by statute on other grounds as stated in McNelis v. Pa. Power & Light, Susquehanna, LLC*, 2016 U.S. Dist. LEXIS 38767, at *82 n.14 (M.D. Pa. Mar. 23, 2016)).

In *Williams*, the plaintiff, a police officer for the Philadelphia Housing Authority with more than two decades of experience, requested an assignment to the radio room after he began to experience psychological difficulties. *Williams*, 380 F.3d at 758. Two months after requesting this position, the defendant terminated his employment. *Id.* Plaintiff claimed that the temporal proximity between his firing and his protected request was evidence sufficient to show retaliation. *Id.* at 760. The court found the "temporal proximity [was] not so

17

close as to be unduly suggestive,'" and required other evidence to establish plaintiff's *prima facie* retaliation claim. *Id.* (quoting *Thomas v. Town of Hammonton*, 351 F.3d 108, 113 (3d Cir. 2003)). The plaintiff offered no other evidence to show retaliatory action, and the defendant offered "compelling" evidence that it terminated plaintiff because he had not pursued the well-established option available for people in his condition, medical leave. *Id.* The court therefore concluded that a reasonable jury could not find that plaintiff's protected activity had caused defendant to terminate his employment. *Id.* at 761.

Similarly, in this case, Plaintiff had nearly two decades of experience as a DuPont employee and, prior to her June 27, 2016 return from disability leave, she requested to work near a bathroom and in an area that did not require steel toe shoes. (CSF ¶89). Plaintiff concedes that both accommodations were provided and that she returned to work on a light-duty schedule. (CSF ¶89-90). Over two months then passed before Plaintiff's employment was terminated on September 14, 2016. (CSF ¶113). As the Third Circuit held in *Williams*, this "temporal proximity is not so close as to be unduly suggestive.'" *Williams*, 380 F.3d at 760. Further, just as the plaintiff in *Williams* failed to "put forth . . . other evidence suggesting that [the defendant] terminated him because he requested a radio room assignment," Plaintiff in this case cannot put forth sufficient evidence proving that DuPont

terminated her employment because she requested the above-named accommodations – each of which were swiftly provided by DuPont.

Moreover, the evidence proffered by the defendant in *Williams* in support of its "alternative explanation" was deemed "quite compelling" by the Court, as the defendant "had granted [the plaintiff] medical leave on two prior occasions, and there was no indication that [the defendant] would not have done so again had [the plaintiff] simply contacted [the Human Resources Manager], as the [defendant] requested." *Id.* Similarly, in this case, Plaintiff testified that DuPont granted every request for short-term disability that she had made in her over nineteen years of employment with DuPont. (CSF ¶121). Indeed, like in *Williams*, there is no indication that DuPont would not have continued to accommodate Plaintiff with short-term disability leave had she not been video recorded on numerous occasions acting in direct contradiction to her reported symptoms and her alleged need for disability leave, as well as in defiance of her physician's restrictions. (CSF ¶¶65-68, 73, 75, 104-07).

Because Plaintiff cannot "proffer any evidence of retaliation other than the not unduly suggestive temporal relationship between h[er] request for an accommodation and h[er] termination," DuPont respectfully requests that this Court dismiss her ADA and DPDEPA retaliation claims as "no reasonable jury

could conclude that the two events shared a causal link for purposes of a[] . . . retaliation claim." *Williams*, 380 F.3d at 761 (internal quotations omitted).

### 1. Plaintiff Cannot Establish a *Prima Facie* Claim for Retaliation under the FMLA.

"To prove FMLA retaliation, an employee must show that his [or her] employer *intentionally* discriminated against him [or her] for exercising an FMLA right." *Mascioli v. Arby's Rest. Grp., Inc.*, 610 F. Supp. 2d 419, 433 (W.D. Pa. 2009) (alterations and emphasis in original) (quoting *Martin v. Brevard County Sch.*, 543 F.3d 1261, 1267 (11th Cir. 2008)). "The Supreme Court [has] recognized that it is often difficult for a plaintiff to prove that an employer acted with 'conscious intent to discriminate.'" *Id.* (citing *McDonnell Douglas*, 411 U. S. at 800-02)).

To make out a *prima facie* claim for FMLA retaliation, "an employee must [establish] that (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) the adverse action was causally related to the request for leave." *Feliciano v. Coca-Cola Refreshments USA, Inc.*, 281 F. Supp. 3d 585, 594 (E.D. Pa. 2017).

For purposes of this motion only, DuPont agrees that Plaintiff engaged in protected activity by requesting and receiving FMLA leave for her foot surgery, and that the termination of Plaintiff's employment was an adverse employment action. However, Plaintiff cannot establish a *prima facie* case for FMLA retaliation

20

as her termination was solely the result of her deceptive misuse of DuPont's short-term disability policy and was in no way causally related to her FMLA leave. Indeed, Plaintiff testified that in her nineteen years of employment with DuPont she (1) had never been denied a request for FMLA leave, (2) had always been placed back in the same or a similar position on each occasion that she returned from FMLA leave, and (3) always received the same salary and benefits upon her return from FMLA leave. (CSF ¶¶121-23).

According to the Third Circuit, "the mere fact that [an] adverse employment action occurs after [the protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." *Krouse,* 126 F.3d at 503. "[O]nly when the facts are 'unusually suggestive of retaliatory motive' may temporal proximity alone support an inference of causation." *Escanio v. UPS*, 538 F. App'x 195, 200 (3d Cir. 2013). "Where the temporal proximity is not 'unusually suggestive,' [courts] ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" *LeBoon v. Lancaster Jewish Cmo. Or. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)).

Importantly, in this case, more than two months passed between Plaintiff's return from FMLA leave on June 27, 2016 and the termination of her employment

on September 14, 2016. (CSF ¶¶88, 113). In *Roberson v. City of Wilmington*, "[m]ore than two months passed between [the] [p]laintiff's return from FMLA leave . . . and her suspension from employment," and this Court dismissed the plaintiff's FMLA retaliation claim on summary judgment, noting that "[c]ourts have routinely found this amount of time, or even less, as not unduly suggestive of a retaliatory motive." 2018 U.S. Dist. LEXIS 163519, at *18-19 (D. Del. Sep. 24, 2018). *See also Williams*, 380 F.3d at 760 (temporal proximity of just over two months was not enough to establish causation); *Thomas*, 351 F.3d at 114 (temporal proximity of approximately three weeks could not raise issue of material fact as to causation in retaliation claim).

As noted above, "[w]here the temporal proximity is not unusually suggestive, [courts] ask whether the proffered evidence, looked at as a whole, may suffice to raise the inference." *LeBoon*, 503 F.3d at 232. Here, the evidence clearly reflects DuPont's expectation that Plaintiff's employment would continue unabated upon her return from FMLA leave, just as it had each and every time Plaintiff returned from such leave the previous nineteen years. (CSF ¶¶121-23). Not only did DuPont immediately provide Plaintiff with both of her requested accommodations upon her return from FMLA leave – (1) to work near a bathroom and (2) work in an area that did not require steel toe shoes – but for over two

months DuPont provided Plaintiff with shortened light duty shifts and paid her
disability for the hours she did not work. (CSF ¶¶89-90, 116).

The evidence overwhelmingly indicates that Plaintiff's employment was
terminated, not in retaliation for requesting FMLA leave as she had done without
issue for nineteen years, but because she misrepresented the severity of her pain to
DuPont Medical and in Dr. Kupcha's assessment forms – which she testified she
knew would be relied upon by DuPont – and was thereafter video recorded
participating in personal activities on company time that contradicted the severity
of her reported symptoms and her alleged need for paid disability.

As stated above, "[t]o prove FMLA retaliation, an employee must show that
h[er] employer *intentionally* discriminated against h[er] for exercising an FMLA
right." *Mascioli*, 610 F. Supp. 2d at 433 (emphasis in original). Here, considering
(1) Plaintiff's nineteen years of issue-free use of FMLA leave, (2) DuPont's
immediate provision of each of Plaintiff's accommodation requests upon her return
from FMLA leave, (3) the not unduly suggestive period of two-and-one-half
months between her return from FMLA leave and her termination, and (4) the
evidentiary record replete with examples of Plaintiff's dishonest behavior – no
reasonable jury could conclude that DuPont acted with the requisite intent to
retaliate. (CSF ¶¶121-23, 89-90, 113, 104-07, 65-68, 73, 75). Accordingly, DuPont

is entitled to judgment as a matter of law and respectfully requests that this Court

dismiss Plaintiff's FMLA retaliation claim.

## II.   Even if Plaintiff Establishes a *Prima Facie* Case of Retaliation, DuPont Had Legitimate, Non-retaliatory Reasons for Terminating Plaintiff's Employment.

"*McDonnell Douglas* provides that, [if] [an] employee establishes a *prima*

*facie* case, the burden of production (i.e., of going forward) shifts to the employer

to articulate a legitimate, nondiscriminatory reason for the employer's adverse

employment decision." *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir.

2009) (citing *McDonnell Douglas*, 411 U.S. at 802). The Third Circuit has

explained that this is a "relatively light burden," which is satisfied when an

employer "introduc[es] evidence which, taken as true, would permit the conclusion

that there was a nondiscriminatory reason for the unfavorable employment

decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). Indeed, this burden

is so "light" that an "employer need not [even] prove that the tendered

reason *actually* motivated its behavior, as throughout this burden-shifting paradigm

the ultimate burden of proving intentional discrimination always rests with the

plaintiff." *Id.* (emphasis in original) (citing *Tex. Dep't of Comm. Affairs v. Burdine*,

450 U.S. 248, 25(1981)).

In this case, DuPont's short-term disability plan provides: "To be considered

disabled you must be unable to work because of an illness or injury." (CSF ¶44).

As the evidence of record reflects, Plaintiff was repeatedly video recorded acting in a manner inconsistent with a person who was "unable to work because of an . . . injury" – especially when considering the stationary nature of Plaintiff's job. (CSF ¶¶65-68, 73, 75, 104-08). Indeed, Plaintiff testified that her position at DuPont was a sedentary position that required sitting. (CSF ¶108). While representing to Dr. Kupcha and DuPont that her symptoms were such that she was unable to endure the nearly non-existent physical exertion required of her sedentary, sitting position – despite also being seated near a bathroom and being excluded from the steel toe shoe requirement – Plaintiff was video recorded walking uninhibited through a parking lot after receiving a manicure and pedicure, mowing her lawn, picking up a child with one arm, and repeatedly driving in defiance of her treating physician's orders after climbing into her Hummer SUV. (CSF ¶93, 108, 89-90, 104-07, 65-68, 73, 75).

Plaintiff was thereafter terminated for misrepresenting her injury for the purpose of receiving payments under DuPont's short-term disability plan – in violation of DuPont's Code of Conduct which expressly prohibits the "[i]mproper use of company funds" and the "[c]oncealment of non-compliance with a [DuPont] . . . policy." (CSF ¶¶113, 124-25). Indeed, Plaintiff testified that HR Manager Cheryl Drew explained to Plaintiff, "we don't pay people to cut their grass," when notifying Plaintiff of her termination. (CSF ¶115). It is well recognized that an

25

employee's "[v]iolation of an employer's policies is a legitimate, non-discriminatory reason for discharge." *Paradoa v. Phila. Hous. Auth.*, 2014 U.S. Dist. LEXIS 75199, *20 (E.D. Pa. June 2, 2014) (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 51-52 (2003)).

Accordingly, DuPont has clearly articulated its legitimate, nondiscriminatory reason for terminating Plaintiff's employment, and, as a result, Plaintiff must establish by a preponderance of the evidence that this reason was pretextual in order to succeed on her retaliation claims.

### A. Plaintiff Cannot Establish that DuPont's Legitimate Reasons for Terminating Her Employment Were Instead a Pretext for Retaliation. Plaintiff's Claims Must Therefore Be Dismissed.

When assessing the presence of pretext, courts "focus[] on whether there is sufficient evidence from which a jury could conclude that the purported reasons for defendant's adverse employment actions were in actuality a pretext for [retaliation]." *Shaner v. Synthes (USA)*, 204 F.3d 494, 501 (3d Cir. 2000). In proving pretext, a "plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether [retaliatory] animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent." *Jones v. Sch. Dist.*, 198 F.3d 403, 413 (3d Cir. 1999) (quoting *Keller*, 130 F.3d at 1108). "Rather, the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in

Case 1:18-cv-01266-CFC-SRF   Document 124   Filed 05/29/20   Page 32 of 37 PageID #: 1402

the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Id.* (quoting *Keller*, 130 F.3d at 1108-09). "In simpler terms, [Plaintiff] must show, not merely that [DuPont's] proffered reason [for terminating her employment] was wrong, but that it was so plainly wrong that it cannot have been [DuPont's] real reason." *Keller*, 130 F.3d at 1109.

This is an impossible hurdle for Plaintiff to overcome as the evidentiary record is brimming with numerous examples of her deceitful and underhanded behavior – the sole basis for her termination. After reporting to Dr. Kupcha that her pain symptoms were aggravated by everything from standing and sitting to using stairs and walking, and after repeatedly reporting to DuPont Medical that her left foot was in pain, Plaintiff was provided a doctor's note which required her to be taken off her eight-hour light duty work shift and placed on four-hour light duty. (CSF ¶¶93, 98-103). Within one week of receiving her wish of placement on four-hour light duty, Plaintiff was video recorded mowing her lawn and walking unassisted through a parking lot after receiving a manicure and pedicure during work hours. (CSF ¶¶68, 75, 104, 105, 107).

Further, Dr. Kupcha's June 2, 2016 Attending Physician Statement explains that Plaintiff was given a restriction of "no driving" for the duration of her "disability period," which Plaintiff testified refers to the time period of March 16,

27

2016 through "at least" June 2, 2016. (CSF ¶¶77, 78). Despite this explicit restriction, Plaintiff was observed driving her Hummer SUV on six separate occasions during that disability period. (CSF ¶¶65-68, 73, 75). On one such occasion in April 2016 – while out on full short-term disability and purportedly unable to perform her sitting, sedentary job at DuPont – Plaintiff was observed driving her vehicle for over six hours from Delaware, to Pennsylvania, to New Jersey, then back to Delaware – with another person who could have driven, Plaintiff's girlfriend, sitting in the passenger seat. (CSF ¶65). On another occasion, Plaintiff had cancelled a doctor's appointment for May 26, 2016, explaining that she did not have someone who could drive her and therefore could not attend the appointment. (CSF ¶72). The day after that cancelled appointment, on May 27, 2016, as well as on May 30, 2016, Plaintiff was video recorded driving to her nephew's house. (CSF ¶¶73, 75).

Plaintiff's unceasing efforts to defraud DuPont continued even after the termination of her employment. On September 16, 2016, two days after her termination, Plaintiff testified that she called the office of Dr. Nikki Patel, a chiropractor she had been treating with, and requested a note stating that she had been released with no restrictions as of August 24, 2016. (CSF ¶¶117). As fate would have it, this date is one day prior to August 25, 2016 – the day Plaintiff was video recorded walking unassisted through a Wal-Mart parking lot and mowing her

lawn after receiving a manicure and pedicure, all while receiving disability pay from DuPont. (CSF ¶¶104-107, 118).

Realizing that her video-recorded activities remained unexcused by Dr. Kupcha's assessments and notes, Plaintiff sought to tie up that loose end by sending him a farcical email on November 10, 2016, requesting a note that would be back-dated to July 12, 2016 and release her to do the exact activities she was caught engaging in on video. (CSF ¶119). Plaintiff's email was addressed to Dr. Kupcha's assistant, Mark Wright, and stated:

> I'm being asked for a more specific note.
>
> I need a note stating the following:
>
> As of 7/12/16 weaning of[f] the boot support. Ice and elevate as needed. Any **activities as tolerated including** but not limited to. . laundry, cooking, grocery store, pharmacy, dining out, **manicure and pedicure, riding lawnmower**, walking, exercise, normal daily activities, etc.

[(CSF ¶119).]

Notably, back on July 12, 2016, DuPont had received a note from Dr. Kupcha requiring that Plaintiff only work a "light duty - 4 [hour] work day." (CSF ¶91). As such, Plaintiff's November 10, 2016 letter to Dr. Kupcha sought a post-termination doctor's note back-dated to July 12, 2016 that would retroactively release her to do any activity she desired while still working four-hour light duty shifts and receiving disability pay. (CSF ¶91). Because this email was sent almost

29

two months after Plaintiff was terminated from DuPont, Plaintiff was asked at her deposition why she requested such a note at that time, she replied: "I don't remember exactly what was going on[] that I needed to have a note that said that." (CSF ¶120). When questioned about who had "asked for [the] more specific note," Plaintiff further testified that she did not know or remember who had asked her for it. (CSF ¶120).

In essence, Plaintiff's employment was terminated on September 14, 2016 as a result of her repeated engagement in activities that both violated her doctor's restrictions and contradicted the severe pain symptoms she had been reporting as part of her dogged pursuit of work-free disability pay. (CSF ¶¶104-07, 65-68, 73, 75. 113-15). These activities included, *inter alia*, receiving a manicure and pedicure and mowing her lawn after leaving her four-hour light duty shift on August 25, 2016. (CSF ¶¶104-07). Two days after her termination, Plaintiff called Dr. Patel's office requesting a note that would say she had been released with no restrictions as of August 24, 2016, the day *before* she was seen engaging in those activities. (CSF ¶117-118). This ruse continued on November 10, 2016, as Plaintiff requested a note from Dr. Kupcha that would be back-dated to July 12, 2016 and specifically state that she may get manicures and pedicures and ride her lawnmower. (CSF ¶119).

Plaintiff's deceptive post-termination behavior was not an aberration, but instead another manifestation of her innate disregard for established policies and procedures, which the record reflects frequently revealed itself during Plaintiff's unabashed exploitation of DuPont's short-term disability policy while she was still employed.

In conclusion, when considering the incontrovertible evidence of Plaintiff's dishonest behavior while receiving disability payments from DuPont – paired with Plaintiff's own admission that she availed herself of FMLA leave and DuPont's short-term disability policy without issue for nineteen years prior to her termination – Plaintiff cannot prove, and no reasonable jury would find, that DuPont's well-reasoned rationale for terminating her employment was instead a pretext for retaliation and "so plainly wrong that it cannot have been [DuPont's] real reason.'" *Keller*, 130 F.3d at 1109.

## CONCLUSION

For the foregoing reasons, DuPont respectfully requests that the Court grant

its Motion for Summary Judgment pursuant to *Fed. R. Civ. P.* 56 and dismiss

Plaintiff's Amended Complaint in its entirety.

CLARK HILL PLC

*/s/ Margaret M. DiBianca*

| | |
|---|---|
| John M. Nolan, Esq., *admitted Pro Hac Vice* | Margaret M. DiBianca, Esq. (No. 4539) |
| J. Michael Nolan, Esq., *admitted Pro Hac Vice* | 824 N. Market Street, Ste. 710 |
| Jackson Lewis PC | Wilmington, DE 19899 |
| 1601 Cherry Street, Suite 1350 | Telephone: (302) 250-4748 |
| Philadelphia, PA  19102 | Email: mdibianca@clarkhill.com |
| Phone:  267-319-7840; 267-319-7802 | |
| Email:  NolanJ@jacksonlewis.com; J.Michael.Nolan@jacksonlewis.com | |

Dated:   May 29, 2020                              *Attorneys for Defendant*